## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>       **Plaintiff,**  )<br>  )<br>       v.  )<br>  )<br>**JACOB RICHARD BURNS,**  )<br>  )<br>       **Defendant.**  ) | Case No. 19-20006 |

## ORDER AND OPINION

This matter is now before the Court on Defendant Jacob Richard Burns' Motion for Compassionate Release (D. 84) and his Amended Motion for Compassionate Release (D. 98). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

On April 24, 2019, Defendant pleaded guilty to knowingly and intentionally conspiring and agreeing with other persons to distribute and possesses with the intent to distribute fifty grams or more of methamphetamine (Count I); and for knowingly and intentionally possessing with the intent to distribute fifty grams or more of methamphetamine (Count II). (Minute Entry dated 4/24/2019). Due to his designation as a Career Offender, Defendant's guideline sentencing range was 262 to 327 months. (D. 29). On August 30, 2019, the Court sentenced Defendant to 218 months of imprisonment and a 10-year term of supervised release. (D. 54 at 2-3). Defendant is incarcerated at FCI Greenville, and his projected release date is October 18, 2033. (D. 90 at 3).

On June 25, 2020, Defendant filed a Motion for Compassionate Release. (D. 84). The Court appointed the Federal Public Defender's Office (FPD) to represent him. (Text Order dated 6/25/2020). On June 28, 2020, the FPD filed a Motion to Withdraw after identifying a conflict of

1

interest. (D. 85). The Court granted the motion and appointed attorney Harvey Welch to represent Defendant. (Text Orders dated 7/1/2020 and 7/2/2020). On July 31, 2020, Mr. Welch filed an Amended Motion for Compassionate Release. (D. 88). On August 10, 2020, the Government filed its response in opposition to Defendant's release. (D. 90). On August 24, 2020, Defendant filed a Motion to Amend his Motion for Compassionate Release, asking the Court to allow him to proceed *pro se*. (D. 95). On August 26, 2020, the Court granted Defendant's Motion to Amend and terminated Mr. Welch's representation. (Text Order dated 8/26/2020).

On September 2, 2020, Defendant filed a letter with the Court regarding inmates at FCI Greenville who tested positive for COVID-19, and on September 14, 2020, he filed an affidavit related to conditions at the facility. (D. 99, 100). Defendant failed to file a motion asking the Court for leave to supplement his Amended Motion for Compassionate Release. Therefore, the Court declines to consider his additional materials. This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction

would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

If an inmate has a chronic medical condition identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming severely ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition reasonably may be found to be "serious" and to "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, a court must deny a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

## DISCUSSION

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A). Since the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A), an inmate is allowed to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for the BOP to file a motion or after

waiting thirty days from when the inmate's request was received by the BOP, whichever is earlier. The statute states as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3528(c)(1)(A).

### A. Defendant Failed to Meet the 30-day Exhaustion Requirement.

Here, it is unclear when Defendant contacted the warden and requested compassionate release based on concerns about COVID-19, but on July 23, 2020, the warden denied his request. (D. 98 at 1). The warden's denial occurred *after* Defendant filed his initial Motion for Compassionate Release on June 25, 2020; however, the denial occurred *before* Defendant's court-appointed counsel filed an Amended Motion for Compassionate Release on his behalf on July 31, 2020. (D. 84; D.88). Subsequently, the Court gave Defendant leave to proceed *pro se* and filed his *pro se* Amended Motion for Compassionate Release on August 31, 2020. (D. 98).

The Supreme Court has held "one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. U.S.,* 395 U.S. 185, 193 (1969). The doctrine is applied in numerous situations and, like many judicial doctrines, is subject to numerous exceptions. *Id.* Therefore, the Court must determine whether it has the authority to waive the 30-day waiting period of the exhaustion requirement. Since COVID-19 has

wreaked havoc on this country, many federal judges, including those in the Central District of Illinois, have considered this issue. Some judges have found that they have the discretion to waive the 30-day requirement due to the serious risks associated with COVID-19. *See e.g. United States v. Anderson,* 2020 WL 2521513 (C.D. Ill. May 18, 2020); *United States v. Scparta,* 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020); *United States v. Guzman Soto,* 2020 WL 195323 (D. Mass. Apr. 17, 2020); *Untied States v. Russo,* 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United State v. Smith,* 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); *United State v. Hanley,* 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. McCarthy,* 2020 WL 1698732 (D. Conn. Apr. 8, 2020). Other judges have held that the 30-day requirement is mandatory, not subject to exception. *See e.g. United States v. Cox,* 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); *United States v. Demaria,* 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); *United States v. Rensing,* 2020 WL 1847782 at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. Roberts,* 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020).

The Seventh Circuit has not yet directly addressed the division, but the Central District of Illinois has previously interpreted section 3582(c)(1)(A) to not require an inmate to fully exhaust BOP procedures before coming to court, in some circumstances, stating:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

*Anderson,* 2020 WL 2521513 at *4.

Although it is unclear when Defendant requested compassionate release, it is apparent that the warden denied the request on July 23, 2020, before Defendant's Amended Motion for

5

Compassionate Release was filed. The Court finds the exhaustion requirements have been met, and therefore addresses this matter on the merits.

### B. Defendant Failed to Demonstrate Extraordinary and Compelling Reasons Justifying a Sentence Reduction.

#### 1. Defendant's Health

Defendant, who is a healthy 31-year-old, did not identify any terminal illness or any "serious physical or medical condition…that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover." USSG § 1B1.13, cmt. n.1(A). Defendant argues that he is at a higher risk of contracting COVID-19 "due to the prison conditions that mandate crowding and cellmates." (D. 98-1 at 3). He argues that he is unable to social distance because he shares a cell with another inmate and "cannot control what his cellmate does and against [his] advice chooses not to wear a mask or social distance." *Id*. While the prison environment presents unique challenges, the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not provide justification for a sentence reduction.

#### 2. Defendant's Family

Defendant argues that COVID-19 has affected the Burns family and his release would allow him to help his 56-year-old mother care for his grandfather who is on hospice care. (D. 98-1 at 4). He states that while other family members go through testing for COVID-19, "his grandfather remains alone in self-quarantine trying to care for himself with the help that his family can provide." *Id*. Although the Court acknowledges that Defendant wishes to assist his ailing grandfather, Defendant has demonstrated a level of disregard for his family during his repeated criminal offenses. Perhaps if Defendant had not conspired with others to distribute

methamphetamine, he would be available to assist his mother and grandfather now. Defendant has failed to demonstrate extraordinary and compelling reasons justifying his immediate release.

### 3. FCI Greenville

Further, unlike at some facilities, there have been no inmate or staff deaths due to COVID-19 at FCI Greenville. To date, 74 inmates and 18 staff members have recovered, and two inmates and six staff members are positive. (https://www.bop.gov/coronavirus/ (last visited on 9/24/2020)). As previously stated, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release." *See e.g., United States v. Melgarejo*, 2020 WL 2395982 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Considering the relatively few positive cases and the number of recoveries during the last several weeks, the Court believes the BOP's approach to containing the outbreak at this facility is adequate. Therefore, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release.

### C. Section 3553(a) Factors Do Not Support a Sentence Reduction.

Finally, the Court will consider the section 3553(a) factors to determine if a sentence reduction would be appropriate. At the time of the instant offense, Defendant was on parole for manufacturing methamphetamine and possessing drug paraphernalia. (D. 51 at ¶ 67). Before that, he was sentenced to six years in the Illinois Department of Corrections for a methamphetamine precursor offense and was convicted of battery on multiple occasions. *Id*. at ¶¶ 53, 60, 64-65.

Between April 2017 and October 2018, Defendant conspired with others to possess with the intent to distribute methamphetamine. (D. 51 at ¶ 1). The conspiracy involved the trafficking a large amount of methamphetamine from Texas to Illinois, and Defendant was personally responsible for at least 183 grams. *Id.* at ¶ 31. Defendant faced an advisory guideline sentencing range of 262 to 327 months for the instant offense based on his criminal history, but he was given a sentence substantially below the guideline range of 218 months. *Id.* at ¶ 106.

The Court finds that his early release would not be justifiable under the section 3553(a) factors. Defendant's criminal history and characteristics do not weigh in favor of immediate release. Additionally, reducing his sentence to time served would result in an unjust sentence disparity between Defendant and others "with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

## CONCLUSION

For the reasons set forth above, Defendant's Motions for Compassionate Release [84], [98] are DENIED.

ENTERED this 25th day of September, 2020.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge